UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUNIOR JUMPP,<br>      Plaintiff, | :<br>:<br>: |
| v. | :   CASE NO. 3:20-cv-1225 (KAD) |
| NANCY J.SIMONOW, et al.,<br>      Defendants. | :<br>:<br>: |

**MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 48]**

Kari A. Dooley, United States District Judge

    On August 20, 2020, the plaintiff, Junior Jumpp ("Jumpp"), commenced this civil rights action in which he alleges that the defendants were deliberately indifferent to his medical and dental needs.[1] Pending before the Court is the defendants' motion for summary judgment. Therein, the defendants argue that Jumpp failed to exhaust his administrative remedies before commencing this action and further that he cannot satisfy the second element of the deliberate indifference claim. They also contend that any requests for injunctive relief are moot as Jumpp has discharged from custody. Although given additional time to do so, Jumpp did not oppose or respond to the motion for summary judgment. For the following reasons, the motion is GRANTED.

**Standard of Review**

    A motion for summary judgment may be granted only where there is no genuine dispute

---

[1] Jumpp brings claims against Nancy Simonow, DDS, Kim Fletchette, Ingrid Feder, M.D. and Leslie Bumpus, DDS (collectively the "medical or dental defendants." He also brings claims against Warden Robert Martin and Deputy Warden Oles (together the "custodial defendants.").

as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …."  *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not

overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[2]

Jumpp was first admitted to the custody of the Connecticut Department of Correction in November 2006. Doc. No. 48-9 ¶ 1. On December 20, 2017, he was readmitted after being charged with multiple offenses. *Id.* ¶ 2. He was a pretrial detainee at the time of the incidents underlying this action. *Id.* ¶ 3.

Jumpp was confined at New Haven Correctional Center from November 21, 2019 through December 14, 2019. *Id.* ¶ 4. He was transferred to the hospital on December 14, 2019. *Id.* ¶ 5. He returned to New Haven Correctional Center on December 16, 2019 and remained there until June 14, 2020. *Id.* On June 17, 2020, Jumpp was transferred from Bridgeport Correctional Center to Corrigan-Radgowski Correctional Center where he remained until he was released after a court appearance on April 27, 2021. *Id.* ¶¶ 6-7.

Jumpp received medical, dental, and mental health treatment at each of these various facilities and all treatment was documented in his individual medical record. *Id.* ¶ 8. His medical records include diagnoses of non-cardiac chest pain, OSA, high cholesterol, dental

---

[2] The facts are taken from the defendants' Local Rule 56(a) Statements and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

The defendants informed Jumpp of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 48-10. However, despite this notice and a specific order from the court, Doc. No. 52, Jumpp has not responded to the motion. Thus, the defendants' statements are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

caries, teeth crowding, accretions on teeth, chronic periodontitis, hypertension, asthma, obesity, and antisocial personality disorder.  *Id.* ¶ 9.  He has been prescribed medications to address his conditions including hydrochlorothiazide, aspirin, flovent, Ventolin, Lisinopril, Triamcinolone, pantoprazole, and atorvastatin.  *Id.* ¶ 10.

The Court does not herein detail the dates or nature of Jumpp's treatment during his period of incarceration because the Court does not reach the claim that the defendants were deliberately indifferent to his medical needs.

While confined at Corrigan-Radgowski Correctional Center, he submitted only one health grievance.  *Id.* ¶ 61.

**Discussion**

The defendants first argue that Jumpp failed to properly exhaust his administrative remedies with regard to any claim before filing this action.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case.  *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 1174, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the

administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The requirement of proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217-18 (citing *Woodford*, 548 U.S. at 93-95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001).

An inmate's failure to exhaust administrative remedies is only excusable if administrative remedies are in fact unavailable. *See Ross*, 136 S. Ct. at 1858. "Availability" in this context

5

means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (quotation marks and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Although "the three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), in considering the issue of availability, they are illustrative. *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense on which, the defendants bear the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the inmate must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to

6

exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

**Custodial Defendants**

The general inmate grievance procedure is set forth in Administrative Directive 9.6 that may be found at http://portal.ct.gov/DOC/AD/AD-Chapter-9.  This procedure is applicable to Jumpp's claims against custodial defendants Warden Martin and Deputy Warden Oles.  An inmate must first attempt to resolve the matter informally.  He may attempt to verbally resolve the issue with an appropriate staff member or supervisor.  Dir. 9.6(6)(A).  If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using a specified form and send the form to the appropriate staff member or supervisor.  *Id.*  If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance.  Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached.  *Id.*  The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance.  Dir. 9.6(6)(I).  The Unit Administrator may extend the response time by up to fifteen business days upon notice to the inmate on the prescribed form.  Dir. 9.6(6)(J).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner, to Level 2.  Dir. 9.6(6)(G), (I) & (K).  The Level 2 appeal of a disposition of a Level 1 grievance

must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. Dir. 9.6(6)(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate and is decided by the District Administrator. Dir. 9.6(6)(M).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. Dir. 9.6(6)(L).

In his amended complaint, Jumpp alleges that he tried to speak to Warden Martin on August 14, 2020 about the alleged denial of medical and dental treatment, Doc. No. 9 ¶ 12, and spoke to Deputy Warden Oles on August 27, 2020 about these same issues, *id.* ¶ 14, but neither took action in response to his complaints.[3]

In response to the defendants' argument that he failed to exhaust his administrative remedies, Jumpp must present evidence showing either that he did exhaust his remedies or alternatively that the administrative remedies were not available to him. In this vein, Jumpp acknowledges on the first page of the amended complaint that he has not filed a grievance regarding any issues in the amended complaint. But he asserts that the inmate grievance process was not available to him, citing Directive 9.6(10). Jumpp alleges that his access to the procedures was denied because he filed more than seven grievances within a sixty-day period. But he has presented no evidence to show that he was, in fact, found to have abused the grievance system. In addition, the directive explains that an inmate found to be abusing the

---

[3] August 14, 2020 was 6 days before the complaint was filed. It would be impossible for Jumpp to have exhausted his administrative remedies after seeking informal resolution on August 14, 2020.

grievance process may be subject to one of three restrictions: "(a) total denial of access to the grievance procedure; (b) a limitation on the number of grievances that may be filed; and (c) a restriction as to the subject matter that may be grieved." Directive 9.6(O). Even if he had been found to have abused the grievance process, Jumpp has not presented evidence showing which restriction was imposed. Nor has he presented evidence showing the duration of the restriction.[4] Accordingly, he has not shown that administrative remedies were not available to him and the defendants' motion for summary judgment is granted on the claims against defendants Martin and Oles.

**Medical and Dental Staff Defendants**

Medical issues are exhausted by filing a Health Services Review ("HSR") as provided in Directive 8.9. *See* Administrative Directive 8.9, available at http://portal.ct.gov/DOC/AD/AD-Chapter-8. These procedures apply to Jumpp's claims against the remaining defendants. There are two types of Health Services Reviews. The first seeks review of an administrative issue, *i.e.*, a particular practice, procedure, administrative provision or policy, or it may allege improper conduct by a health services provider. The second seeks review of a diagnosis or treatment, including a decision to provide no treatment. Dir. 8.9(9).

Prior to filing an HSR, the inmate must seek an informal resolution of his claim by discussing the claim, face to face, with the appropriate staff member or by submitting a written report to a supervisor. Staff shall respond to the inmate within fifteen days of the receipt of a written request. Dir. 8.9(10).

An inmate filing the first type of HSR must designate the "All Other Health Care Issues"

---

[4] Though not argued by Jumpp, it is noted that Jumpp's informal attempts to speak to defendants Martin and Oles clearly do not satisfy the exhaustion requirement.

box on the form and provide a concise statement of what he believes to be wrong and how he has been affected. Dir. 8.9(12). The HSR Coordinator evaluates, investigates, and decides each review within thirty days. Each review must be rejected, denied, compromised, upheld or withdrawn. Dir. 8.9(12)(A). If the inmate is dissatisfied with the response, he may appeal the decision within ten business days. Dir. 8.9(12)(B). HSR appeals are decided by the designated facility health services director or his designee within fifteen business days after receiving the appeal.

For the second type of HSR, the inmate must designate the "Diagnosis/Treatment" box on the form and concisely explain the reason for his dissatisfaction. Dir. 8.9(11). Upon receipt of the form, the HSR Coordinator scheduled an HSR appointment with an appropriate medical professional as soon as possible. If the medical professional determines that the treatment was appropriate, the exhaustion process is concluded. Dir. 8.9(11)(A).

Although Directive 9.6 includes a provision regarding abuse of the grievance process, Directive 8.9 does not. Thus, Jumpp was required to file HSRs regarding his medical and dental claims.

Jumpp filed one HSR on May 10, 2019, notably, a date which predates much of the conduct complained of. Doc. No. 48-5. However, even there, he failed to follow the directives. He checked both the Diagnosis/Treatment and All Other Health Care Issues boxes, presented no evidence of attempts at informal resolution and included several issues: lack of treatment after he swallowed a razor blade in May 2019, lack of mental health medication and treatment for auditory hallucinations, and lack of dental treatment. For these reasons, the HSR was returned without disposition. Jumpp did not correct these errors and resubmit the grievance as directed.

On the record evidence there is no genuine issue of material fact that Jumpp did not exhaust his administrative remedies as to the claims against the medical defendants and the motion for summary judgment is granted as to them as well.

**Conclusion**

Defendants' motion for summary judgment [**Doc. No. 48**] is **GRANTED** for the reasons stated. The Clerk of the Court is directed to enter judgment in favor of all defendants and close this matter.

**SO ORDERED** this 9th day of August 2021 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge